The first case today is No. 24-1455, United States v. Brian Jarrell Acevedo-Rodriguez. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning. Attorney Robert Hennessey on behalf of the appellant, Mr. Acevedo-Rodriguez. Good morning. Are you going to reserve any time for rebuttal? I would like to reserve one minute if that's okay with the court. Okay. That's perfect. Please go ahead. This is a sentence appeal from the imposition of a 207-month sentence, a sentence that was 86 months above the top of the guidelines range as calculated by the Probation Department, an amount of 71% imposed upon a teenage first-time offender for a course of conduct occurring in the District of Puerto Rico. With the court's permission, unless they have any questions about the waiver issues, the appellate waiver issues, I'd like to just move on to the substantive claims with respect to the imposition of the sentence. Go ahead. I just wanted to ask you, did the government claim that it was a violation of the appellee waiver provision when the collateral attack was made? No. And so they kind of stood up and said, we agree that this should happen? Well, I think they opposed the substance of the 2255 motion, but in terms of the remedy of a resentencing, I don't think they objected to that. Okay. In my experience in the District of Puerto Rico, the appellate waivers don't cover 2255s. In other districts, I have seen it, but in Puerto Rico, it's just the waiver appeal, it's within X sentence or whatever. That's the case here as well. That is my understanding. In the original plea agreement, there was no waiver of 2255, right? It's consistent with apparently what is the policy in the District of Puerto Rico. But your position is because it's a resentencing, the waiver doesn't apply for resentencing. You would have to specifically put it in the plea agreement? Yeah. My argument with respect to the appeal waiver is twofold. One, as your Honor suggests, that the plain language of the appeal waiver as contained in the plea agreement would have to say resentencings. And it does not. And on that point, I would point, as I did in the brief, to this court's case in U.S. v. Anguillillo, 864 F. 3rd. 30, where the court assumed without deciding that was the case. They acknowledged that it was an odd set of circumstances, but they proceeded as if that were the case. My second argument with respect to the appeal waiver is that even if the plain language could be read to encompass the appeal waiver, it should not be enforced by this court because to do so would create a miscarriage of justice. And that is in light of what we are arguing is the government's material breach of the plea agreement itself. Specifically, Section 8 of the agreement obligated both parties to jointly request the low end of the guidelines for an adjusted offense level for all of the non-carrying of firearm charges. And then there was, at that point in the case, there was a separate 120-month on and after sentence that would be imposed. So how were the dismissed firearms charges to be handled? Well, I think there may have been a possibility at the time of the 2255 to bring those. I'm talking about before then. Were they included in the guidelines calculations as relevant conduct? I know the carrying and use of a firearm were included under the guidelines provisions for that conduct. I don't know that the district court said I'm finding my preponderance if this is relevant conduct even though it wasn't ultimately charged or pled guilty to. My understanding is there's none of that sort of analysis in the record. But what is the argument they have? What is the specific violation that the government breached the plea agreement? Well, it is, you know, once we reach the point where there is a new PSR at the time of the resentencing, and the new PSR makes a calculation with respects to the non-firearm charges, the government still recommends a period of 207 months, which is in conflict with their obligation in the plea agreement to recommend on those counts the low end of an adjusted offense level of 29. And our argument is that is a breach of the plain terms of the agreement. Okay. Now, let's assume we hold there's a breach. What is the remedy that you're seeking? Well, it's a little complicated in terms of remedy. Obviously, there's... Of course, remedy number one can be vacated. Yes. I don't know if you're seeking that. We are not seeking that. And I think, frankly, the time to have sought that would have been... I mean, the plea itself was never challenged. And then once the one aspect of the... Okay. So I understand then your request would be that the government would have to stick by that particular recommendation. Yeah. That's still not binding on the court. That's one of the issues. For sure. So just to pick it apart a little bit more, my first argument is that if the court finds that there was a breach, that should relieve us of the issue of the appellate waiver, and the court should consider this case on its substance. That's number one. Number two, and I think it's important that the court decide whether there was a breach because, as you suggest, if it's remanded for resentencing, the question of whether or not the government is obligated to follow that needs to be decided at the time of potentially a third sentencing. I'm now just a little bit confused. I'm sorry to take you back. Of course. So your position is that your client did not breach the appellate waiver by appealing after resentencing, but the government did breach its obligations by arguing for a sentence that was higher than the low end of the guidelines without the on and after, I take it, the 924C. Yes. So my argument is that the government obviously breached at the time they made their sentencing recommendation for the reasons I just discussed, and that releases my client from his obligations. But that was on resentencing. That was on the resentencing. As is this appeal is on the resentencing. Why does it apply to one party but not the other party? That's what I'm... So I would say it either applies to both or applies to neither. So if the government is going to breach, you know, it could go either way. If it's found that the government was breached, then it would be a miscarriage of justice in the circumstances to hold my client to the appellate waiver. Got it. That's sort of my thinking on that. Let me ask you, let's move on to the merits of the procedural substance of reasonableness. I know there's, as you acknowledge, the variance is quite high. Yes. But if we look, you know, at what occurred, I believe it's 11 robberies, carjackings, plus the 924C count. So that's really not contemplated by the guideline. This is like a pattern and practice. So why wouldn't that be, you know, substantively justified? Well, let me take this in reverse order. The 924C counts, I think, should play no role. There were no findings of relevant conduct. There was no I find by a preponderance of the evidence. There's no, certainly there's no... Was there an objection to the pre-sentence report? Because that's all in the pre-sentence report, that information. The fact that there were firearms, well, some were fake firearms and some were real firearms that were either used or brandished during some of these offenses, that was all contained in not both the stipulation of the parties at the time of the plea agreement and then found again by probation department at the time. My argument with respect to, you know, insofar as none of those have been charged substantively under the statute, which have required 120 month on and after sentence, they are all accounted for the enhancements for the use and brandishing of firearms within the guidelines. Those... But there's multiple criminal acts. Each is a separate count. You know, it's not like he's doing everything in a single instance. He's doing one, then he does another, he does another, he does another, he does another. So in terms of the multiplicity of counts, as opposed to my argument with respect to the brandishing and use of the firearms not being separately charged is that it's accounted for in the guidelines calculations for counts 1, 2, 15, 17, 19, 23, 25, 27. But in terms of the multiple instances, my argument is also that that is also accounted for in the guidelines. Please continue. Okay. Under guidelines 3D1.4, there's a five-level multiple count enhancement. And the plain language of that is that it contemplates more than five counts for a five-point enhancement. So my argument is that these, even the multiplicity of counts, is contemplated for and provided for within the guidelines. Therefore, under this court's case law, if it is provided for in the guidelines, there had to have been a more explicit and a more compelling explanation as to, in this case, why this was not sufficient. And why wasn't this an explicit, compelling explanation? Because I believe it was fairly thorough. In terms of the multiplicity, the district court cited, and I think this is a direct quote from the filing of the government, that there were X number of accounts of Hobbs Act robbery and X number of counts of carjacking. I mean, literally stated the number of counts. I did not think there was a particularly fulsome explanation as to why the five-level multiple count enhancement in... Isn't that the judge sending a message saying, I've looked at the guidelines, they're not mandatory, I've added these five counts, but based on this overall conduct, that's not sufficient and upwards variances weren't. That wouldn't be enough? What else would he have to say? He would... There is language in 3D1.4 which contemplates, or there used to be language that would contemplate a departure. I think that you would make some... What we expected is some specific finding and some fulsome explanation as to why this enhancement that's already been provided is insufficient to capture the severity of the offense. The last point I'll make is what is lingering behind all of this is the fact that this district court judge imposed the exact same sentence as they did during the first sentencing, which I think raises a pretty powerful inference that none of this was really on the mind of the district court. What was on the mind of the district court was to render a nullity the vacatur of the one firearms charge and just by rough math reimpose the same sentence. Okay. Thank you. Thank you very much. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, Your Honors. I am Juan Carlos Reyes on behalf of the United States. May I please the court? Go ahead. Your Honors, the waiver of appeal provision in this case forecloses the defendant's arguments. The waiver was triggered by an aggregate imprisonment sentence of 228 months or less, and the district court imposed a sentence of 207 months, which falls within that range. With respect to whether the waiver applies at resentencing or not, it is significant that the defense's argument that it does not runs contrary to the parties' understanding in the district court. It is important that both in the resentencing memorandum and, again, at the resentencing hearing, the government stated for the record that a sentence of 207 months would trigger the waiver of appeal provision. This is at pages 158 and 174 through 175 of the appendix. There was no objection from the defense, and it bears mentioning that the defense attorney who represented that defendant at the resentencing proceedings was the same defense attorney who negotiated the plea agreement, Attorney Jason Gonzalez. The reasonable inference is that there was no objection to the government's statement for the record that the waiver of appeal would be triggered. There was no objection because that is consistent with the parties' understanding of what they agreed to. This is also consistent with case law from sister circuits. We cited Cooney from the Eighth Circuit, Cutts from the Tenth Circuit, where these courts in turn cite other cases where courts of appeal have enforced waiver of appeal provisions at resentencings. For example, in Cooney and Cutts, the language was similar where the waiver was a waiver of the right to appeal the sentence, and the court found that it applied to a resentencing. Counsel, let me ask you. Let's assume that, or let me put it this way. Are we able to bypass that issue, as I believe it's been done before, and go to the specific merits? And if we say that there is no substantive or procedural unreasonableness in the 207 month, that ends, you know, that's an affirmance. We could also do that, correct? That is correct, Your Honor. Let me then ask you. Isn't, you know, because you practiced in Puerto Rico at the U.S. Attorney's Office for countless years. I sat there for 20 years. But it seems to me that a sentence of 207 months for approximately 11 robberies, and most of these are armed or even if it's fake pistols, you know, I have to say, I have seen indictments in the past, 5, 6, 7, but this is kind of like tops of all. Is it, you know, would you agree that within the realm of sentences that have been imposed in Puerto Rico, this is a relatively low sentence compared to some life or close-to-life sentences that we've seen, you know, very serious offenses, but not back-to-back-to-back-to-back as happened here. That is correct, Your Honor. And this Court has discretion to bypass the appellate waiver. We do submit that the defense failed to prove a clear or obvious breach which is required either under plain error view or under the miscarriage of justice standard. We cite United States v. Davis to that effect. But going to the merits pursuant to Your Honor's question, yes, Your Honor, and it's important that in this case none of these arguments were preserved except for the substantive or reasonableness claim where the sentence was ultimately unreasonably long. The procedural arguments were all forfeited and not raised in the district court. So for the defendant's claim of procedural error as to the aggravating factors to have any chance on plain error view, he has to prove it is clear or obvious that the factors relied upon by the court, which were the number of robberies and carjackings and the associated brandishing and discharge of firearms associated with those crimes, was not, I'm sorry, was already accounted for in the guidelines. He has to prove this by clear or obvious based on the record. And I'd like to clarify that it was not 11. It was 17 crimes. It was, in total, between the robberies and carjackings, it was 17. Now, Brother Counsel mentioned... I believe that's within a spree of like 2 months or something like that, a very short span, right? It was a relatively short span, Your Honor. And we cite... I have a question about that. So if the 10-year mandatory minimum was fundamental to the first sentence, if it was fundamental, then I do think the miscarriage of justice prong for set-aside might be in play here. So tell me why it was not fundamental and the fact that that is now out of it shouldn't matter. Well, Your Honor, in this case, the defendant received a huge benefit by having more than 50 years' worth, based on statutory minimums, of 924C counts that were dismissed. And it was based on the government's understanding, its good faith understanding, never objected by the defense, that it could still recommend the same 207 months at sentencing that the government agreed not to seek reinstatement of those charges. I may be misremembering, but I think Brother Counsel essentially said that the court didn't say it was relying on any of that at resentencing. Your Honor, the fact is that the court relied on the numerosity and the seriousness of the 17 robberies, and it relied on and the government would like this court to respectfully direct this court to the commentary to Section 3D1.4, that is instructive because the guidelines themselves anticipate that a non-guideline sentence will be imposed in a case like this one where, and I quote, the Sentencing Commission says a non-guideline sentence, and specifically a departure, and I quote, would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 units. Your Honor, in this case, it wasn't 5, it wasn't 10, it wasn't 12, it was a whopping 17 units that the defendant earned. So, yes, in this case there was a total of significantly more than 5 units. It was more than triple the number of units cited in 3D1.4. So under the guidelines' own commentary, a non-guideline sentence is appropriate. In this case, the fact that the court imposed a non-guideline sentence under 3553A based on a variance doesn't make a difference. The point is that the guidelines themselves contemplate a non-guideline sentence with these many robberies and carjackings. Can I just ask you one more question? Do you recall, at the time, based on the probation office's assessment, at the time of the original sentencing, a guideline sentence, which would also include the mandatory minimum, he was facing the possibility of 241 months, or is it less than that? No, Your Honor. At the original sentencing, he was facing 87, well, based on the plea agreement. I thought the guideline range was 87 to 121. No, the guideline range was 97 to 121. Okay, so that's what I'm saying, 121 plus 120. But the parties recommended 87, yes. But he could have been facing, just as a guideline sentence, 241 months without a variance, right? That's correct. Okay. That's my understanding. That's what I want to know. It could have been higher. The parties calculated a lower offense level under the plea agreement, beneficial to the defense, suggesting that the mitigating factors were considered. In fact, at the sentencing hearing, I'm sorry, at the resentencing hearing, and this goes now to the mitigating factors, the defense said that the drug use and the youth factors were taken care of in the plea agreement when the defendant pled guilty. And considering that it was the defense who represented this to the court, he cannot now fault the court, much less on plenary review, for not rehashing those arguments. I'd also like to touch upon the court's open-the-door statement that the defense challenged for the first time now in appeal. The court said that the plea agreement opened the door to a 207-month sentence of incarceration, which the court originally imposed taking into consideration the elements of the offenses, defendant's participation, and the 3553 factors. Your Honor, is that actually correct? Because the plea, 100%, because the plea agreement brought dismissal of the numerous 924C counts that would have otherwise exposed the defendant to more than 50 years of statutory minimum imprisonment. So, yes, it did open the door to a 207-month sentence, achieving dismissal of all those 924C counts. This was never challenged by the defense in the district court. The defense never asked for any clarification of this statement, but yet the defense now, in the opening briefs, states that the statement suggests the possibility that the court may have thought that it didn't have to explain its sentence. May I just finish that point, Your Honor? And we have two responses to that. First of all, suggesting the possibility is a far cry from establishing plain error. And second, the court simply meant that the plea agreement opened the door to 207 months because it achieved dismissal of the many 924C counts for which the defendant would have otherwise been exposed. And this was not challenged by the defense in the district court. The stipulation of facts in the same plea agreement shows that in all those robberies as to which 924C counts were charged, there was violence, there was use of firearms by the assailants. So, considering all these factors, Your Honors, we submit that this court should enforce the appellate waiver. We understand that even if, for the sake of argument, a breach of plea agreement were found, which we do not believe that it was found because this court should apply plain error review, as we stated in the 28J letter. It disincentivizes gaming the system by defendants. But if the defense, assuming arguendo, that the government had to recommend 87 months, that that means the defense itself reached the plea agreement because the defense did not recommend 87 months. The defense recommended 97 months, and their breach would release the government of its obligations to recommend 87 months. Also, the frustration of purpose doctrine that we raised in the brief would also be something that we could rely on. The defense, ironically, now argues that the government should not rely on frustration of purpose because in the district court, the government never asked for it to be released, but... This is all in your brief. Yes, Your Honor. Counsel, one very quick last question. 207 months is 16 years, correct? Approximately, if my math is... One more. Let me say, had the district judge, based on these same exact facts, and maybe provided some additional detail, sentenced 450 months, for example, the government would still be defending the validity of that substantively reasonable sentence? Yes, Your Honor. Yes, Your Honor, this was a very beneficial outcome for the defense, and, in fact, this case is a prime example that a sentencing court's reasoning can be inferred by comparing what was argued by the parties with what the court did in terms of the substantive reasonableness of the sentence. The government argued that the fact that count 2 was dismissed did not make, based on Taylor and the technical application of the categorical approach, did not make the offenses any less serious, violent, or dangerous because, in fact, count 1, that was not a proper predicate for a 924C offense, was perhaps the most violent of all the robberies. So the government submitted that the total aggregate imprisonment sentence recommended under the plea agreement, 207 months, still fits the defendant's crime. Obviously, the court agreed with that. This was a plausible rationale. So the sentence was within the wide range of reasonable outcomes and reached a defensible result, so, therefore, it was also a substantively reasonable sentence. Thank you, counsel. Thank you, Your Honors. One-minute rebuttal. Please reintroduce yourself on the record. Attorney Robert Hennessy on behalf of the appellant. I'll try to be brief and quick with my minute. The commentary to 3D1.4, I should note for the court, that since the briefing was relied on by the government, I should note for the court, has been removed from the sentencing guidelines by the Sentencing Commission. Take of that what you might with respect to its application here. I want to make clear that at the time of the resentencing, there was... How do you read that as making a difference? Well, what it's being used... I mean, it wasn't itself a law, but it's providing guidance to perhaps the analysis of the reasonableness here. I think the fact that the Sentencing Commission has seen fits to remove it from its commentary suggests that it undermines its weight, even with respect to this. It's not a statute that has had to be repromulgated or anything. But I just wanted to point out, just because it featured so heavily in the government's argument here. You want to finish up? Yeah, so the last point is that in terms of count one being the most violent, I think if you look at the PSR, you'll see, if my memory serves correctly, that that is the count in which my client remained in the car for the duration of the incident. And that the dismissal of these other gun charges was not a bargain for exchange at the time of the resentencing. So don't think that it was. Okay, thank you. I appreciate it. Thank you very much. Thank you, counsel. That concludes argument in this case.